Good morning, Your Honors. May it please the Court, my name is Cori Endo and I'm here on behalf of Geraldo Perez-Perez. With me at counsel's table is Jay Stansel, and also he's on the briefs. As Rita instructs, when a court sentences a defendant, the court must set forth enough to satisfy the appellate court that he has considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. Counsel, can I ask you a couple of more specific questions about the case? Of course. One of the arguments was that racial profiling led to Perez-Perez being stopped, but when I read the record, it looked to me as though he wasn't stopped. The policeman had stopped somebody else in this park next to the courthouse, and Perez-Perez walked over to the policeman and said, why are you bothering this guy? I agree that there's confusion on that. As I was preparing for today's argument, I also, I think there are ambiguities about exactly what occurred there. But I think the problem with the district court's, the procedure the district court employed in sentencing Mr. Perez-Perez is the court never resolved that issue. The court never rejected it. Is there any question to be resolved? I mean, I can see where there's an urging in the brief, but I couldn't see where there was a factual question that was raised in the factual materials, any declaration or testimony or anything. It looked unambiguous that Perez-Perez approached the cop. Well, even assuming that's true, there was also the question of what brought Mr. Perez-Perez to the attention of law, of law enforcement. Oh, Mr. Policeman, why are you bothering this guy? I mean, that's... But oftentimes in our illegal reentry cases, the defendant has engaged in other unlawful behavior aside from just being in the country illegally. And that's not the case here. And that was advanced at sentencing as well, that given the nature of the contact, the reasons for the contact, that that was another basis for the court to depart downward. You're talking pretty abstractly. Have I got the facts wrong? We do a lot of cases. I can easily be wrong. No. No, Your Honor. But I think what the problem with the record below is that we don't know how the court resolved this issue, or if the court forgot about it, or if the court rejected it, that would be one thing. But the court never made a rule... When you say this issue again, could you be precise to state the issue that you're you think the court didn't address? I think there are several issues the court didn't address. Well, what were you just referring to? I was just referring in response to Judge Kleinfeld's questions about the nature of the staff and why he became... Okay. But I heard Judge Blackwell saying he didn't see an issue... Okay. ...in the record at all because he understood that Perez-Perez approached the police, but so is that factually correct or not? Did Mr. Perez-Perez approach the police or is that unclear in the record? But even if we assume that's true and we move away from the Fourth Amendment question, there's the Sanchez-Rodriguez question about whether the nature of the prior criminal history and whether Mr. Perez-Perez was entitled to either a downward departure given the nature of that history or whether the court could have exercised its discretion and imposed the sentence below the guidelines given that... Okay. ...there was also the... The court definitely had power to impose a lower sentence, but where does Rita leave you when the court sentenced at the low end of the guidelines? So now the appellate court, as I understand it, after Rita, can give a presumption of reasonableness at the appellate level? The court can certainly do that. I don't think this court has ever adopted that presumption of reasonableness. But I think what Rita requires that's at issue in this case is for the record to be clear for the basis for the court's decision. And that's necessary so that this court can engage in a reasoned review of the reasonableness of the sentence, both procedurally and substantively. What's unreasonable? I had trouble understanding it. He's an illegal alien. He keeps coming back. And he makes his living dealing crack and cocaine. And he gets a below-guidelines sentence because of the fast-track program, which basically means special break because we're a busy district, and if you plead out, you get less than the guidelines. I don't understand. What's the unfairness? Well, we have not challenged the reasonableness of the ultimate sentence. What we're challenging is the adequateness of the record for this court to engage in a meaningful review. And what Rita says, there the court found the record was adequate, but the court there said that they could assume that the court was the sentencing court was compelled by the guidelines. Here we have a district court judge who has said he's not particularly compelled by the guidelines, that they're not a particularly determinative factor. He said they were a starting point but not mandatory, and he was considering overall reasonableness. And he said that the guidelines were not particularly determinative to him in this case. And so we have a situation where Mr. Presper has advanced several arguments for why he should receive a lower sentence, and we have a record that doesn't address any of those arguments. The judge acknowledged that he understood that he needed to consider the 3553A factors. How many of them, then, did he go on to consider? He certainly did not consider them all, Your Honor. And his consideration of certain factors, for instance, the history and characteristics of Mr. Presper's, didn't encompass the full breadth of information presented to the court. The court focused instead on his criminal history and didn't consider information such as his addiction and his family situation and what compelled him to return to the United States. You're assuming if he didn't talk about it, he didn't consider it? I'm unwilling to make that assumption. But what I know is that there's no way for us to know what the court considered. We don't know whether the case was considered. But if the lawyers talked about it and the judge listened, one could infer that he considered what they talked about and he listened to. Or one could alternatively suggest that he didn't consider anything unless he himself talked about it after everybody else did. And I wonder what you mean. I think without some specific mention to the particular arguments advanced by Mr. Presper's, there's no way for us to know whether the court considered it and rejected it, whether the court forgot about it, whether the court misapprehended that argument. We simply have no way of knowing. We're left in the zone of speculation where we're forced to either assume that the court did the right thing. But if we do that, then the procedural reasonableness that this Court considers is meaningless because the court can, if there's a range of a reasonable sentence, the court can always scour the record and find some justification. But at the end, he gives the lawyers both a chance to talk. If there's something that he overlooked, they could have raised it and said, Judge, you didn't speak to this or that. I see that at the very end of the sentencing, both lawyers talk. He asked if there was anything further that counsel had. And counsel said no. But I don't think that changes this Court's analysis. It matters. Sometimes when you sentence, or at least when I used to sentence, they've got some issue or maybe a whole bunch of issues, and you forget to make a factual finding on one of them, and then the lawyers say, Your Honor, we don't have a factual finding on this issue, and you say, oh, thanks, make a finding. And certainly that would have been helpful, but I don't think it changes Mr. Perez-Perez's right to have this Court review the sentence for reasonableness, which I don't believe the Court can do absent some meaningful statements by the Court. In cases like Diaz-Argueda, in the First Circuit case, or I'm sorry, in Sanchez-Mores, there weren't these kinds of statements. Counsel did not attempt to do that, and this Court has never required that, and I don't think that's necessary. And if it were to become necessary, I think the district court would have to inquire further. There's a recent case out of the Sixth Circuit, which I can provide supplemental authority on, called Thomas, where the Court found that questions such as anything further... I don't get where anything would have mattered here. He's got a record as long as your arm, a whole lot of drug offenses, serious drugs, and he's not even entitled to be in the United States, but he keeps coming back, and it appears to be how he makes his living. What issue? The way I'm understanding your question, and correct me if I'm wrong, is that this is a harmless error analysis. I don't know if there was error at all. I don't understand what the issues were. You don't understand the substantive issues that Mr. Perez-Perez was advancing at Second Circuit? Yes. I do not see what was at issue. Well, I think the clearest cut of those issues is the Sanchez-Rodriguez argument, that his prior criminal history did not warrant a 16-level bump, which is consistent with what somebody would have gotten had they committed an act of terrorism or murder, and the Court, this Court, has recognized that that is a legitimate ground for departure. We see that in Sanchez-Rodriguez. And so here we have Mr. Perez-Perez has a factual basis for his argument. He has a legal basis for his argument. And we have a district court that fails to address that argument on the record. And so without the Court addressing that record, I don't think there's any way for this Court to assess the reasonableness of the procedure that the Court employed in sentencing him to 62 months. Thank you, counsel. Thank you, Your Honor. Good morning. May it please the Court. Annette Hayes on behalf of the United States. With the Court's permission, I'd like to address a few of the issues that came up in the argument this morning. First, on the issue of the alleged racial profiling and what impact it might have or should have had on the sentencing in this case. It seems to me the argument appears to be from the defense solely that because the Court didn't address that issue directly, somehow this record is insufficient. I would encourage the Court to note, one, that in the record at ER 45, the judge says at the beginning of sentencing, I've reviewed the plea agreement, I've reviewed the sentencing memoranda, and I've reviewed the pre-sentence report. And as the Court can see from those documents in the defense sentencing memorandum, that issue is addressed at great length. So clearly the Court did consider it. Counsel, when someone approaches a policeman, asks a question, what can the policeman do? What interrogation can he then enter into? It certainly, in a Fourth Amendment context, is clear that this defendant, to the extent the record is clear here and he did approach the Federal Protective Service officer, that certainly the officer can respond and he can certainly ask questions. But the question is, what questions could he ask? Well, and I think here he was entitled to ask the sort of question that he did ask. And I think more importantly, the question is, so what impact should that have on sentencing? Is that something the Court can consider? Well, that leads to whether there was any racial profiling or not. That's the critical thing. Yeah. And I think, frankly, the record isn't developed in that respect. There are statements made by defense counsel in the sentencing memo. Both I at sentencing and defense counsel made some additional statements based on conversations we had had with someone who had spoken directly with that officer, but I don't think the record is particularly developed. What I think, though, the Court needs to focus on is, is this something the Court could have considered for purposes of determining a sentence? In that respect, one, I'm not aware of a particular case that addresses that issue, but I think it could fairly be argued that under 3553A, which says the Court could take into account the circumstances of the offense, that a judge could take that into account. And I think even more importantly in this case, what needs to be focused on is that the judge did. He reviewed the documents that made these arguments. He listened to argument from counsel on this subject. When that argument came up, he specifically addressed it and said, I'm aware of the circumstances. So I think it's fair for this Court to assume he did consider it. And what ended up happening is, as I think the record made clear, the judge here decided that unlike the argument defense counsel was making, which is, boy, this just isn't fair to apply a 16-level upward adjustment under the guidelines because this is just a street-level dealer and you would have the same adjustment upward for a terrorist, I think what you hear the judge saying here is it's not just a single 16-level conviction. You have four of them. And given that criminal history and then the 2003 conviction for an immigration offense where he received a 30-month sentence, whatever all the arguments were that defense counsel made, they didn't overwhelm those facts, all of which are appropriate to consider under 3553A and then became. Counsel, the thing that worries me, I guess, most about this record is what the judge did. He said he knew the guidelines weren't mandatory. He knew that the past criminal history was pretty bad and that he'd come right back after deportation. And he also recognized that this was a status offense. The guy hadn't done anything now that was criminal. But there are a lot of factors under 3553A, and we judges at this level are often uncomfortable when the judge says, well, yeah, there are 3553A factors that I've considered, but it doesn't go any farther. And we do want to educate our judges to develop the record and to consider the factors and state what they have said about them. Now, this is quite a new judge, a good judge, but quite a new judge. Do you think that he did what he should in developing the record? And with all due respect, Your Honor, I really think he did. What I think is striking about this particular sentencing record is the way in which the judge actually engaged defense counsel and to some degree government counsel in the issues and the 3553A factors that were in play. I think in particular, after Mr. Stancil began his argument and really focused on this issue of, boy, this 16-level increase for a street-level dealer, that isn't fair, and as he kind of developed that argument, Judge Robart responded. And he said, look, here's what I'm seeing. These are the things that I think are determinative with respect to the sentence. And then he specifically says to counsel, and it strikes me that the argument you make, the arguments you make are difficult in the face of that type of record. I would like your thoughts. And then there's more record in which Mr. Stancil quite eloquently goes through many of these arguments and explains why he thinks the Court should focus on some other factors as being more important than the ones the judge has indicated and the government has argued are important. And then again, after that colloquy, again, the judge acknowledges the value of defense arguments he's heard. He explains why it is he focuses on certain things over others in deciding what the appropriate sentence is. With all due respect, I think that is a very well-developed record, and I think, especially in light of what we've seen in Rita from the Supreme Court, far more developed than what the Supreme Court has said is sufficient. If I may, Your Honor, I would just like to address one other issue, and that is, you know, the issue of whether or not the Court even considered the various arguments that were made. As I reviewed the record in the case, there were really four different arguments, this issue of the lifetime addiction and whether or not that was addressed, the allegation that the defendant was a target of racial profiling, as we've been talking about, the reason why he returned, his interest in reuniting with his family, and finally, an argument about unwarranted sentencing disparity. And I think, although the judge doesn't go through every single one of those arguments, what the judge does do, and Ninth Circuit case law makes clear, he doesn't have to address every 3553A factor, U.S. v. Mix, and several other cases say that. He makes clear why he came to the decision he did, what factors had a stronger impact to him in terms of what the sentence should be in this case, and we would encourage the Court here to find that he has done everything he was required to do in sentencing and that the record is sufficient. If the Court has no further questions, the government would ask that the Court affirm the sentence in this case. Thank you. Thank you, counsel. I think you ran over, but go ahead and take 30 seconds, if you like. Thank you, Your Honor. I would just urge the Court to look at the transcript. The government makes a lot of statements about how the record reflects how the judge ultimately made his sentencing decision. And I think a review of the sentencing transcript shows that the Court actually never made a finding with regard to any of the arguments that Mr. Perez-Perez advanced in sentencing. We would ask the Court to remand for resentencing. Thank you, counsel. Thank you.
judges: Fletcher, Kleinfeld, Gould